1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| Erik Samuel de Jong and Daryl Lynn de Jong, | No. CV-17-04795-PHX-SMB |
|---|---|
| Appellants, | **ORDER** |
| v. | |
| Gary Genske, | |
| Appellee. | |

Appellants Erik and Daryl de Jong (collectively, "Appellants") appeal the bankruptcy court's decision granting Appellee Estate of Hugo N. Van Vliet ("Appellee") a claim in the amount of $240,273.46. (Doc. 6, "Op. Br."). Appellee has filed a response brief (Doc. 8, "Resp.") to which Appellant replied. (Doc. 10, "Reply"). The underlying dispute concerns a property that Appellants leased from Appellee in order to run a dairy. For the reasons that follow, the bankruptcy court is affirmed.

### I. BACKGROUND

Appellants were in bankruptcy court after filing a petition pursuant to Chapter 11 of the Bankruptcy Code. Appellee filed a proof of claim in the amount of $347,773.46 to which Appellants objected. (ER0209; ER0234). After a three-day hearing, the bankruptcy court issued a decision granting Appellee's claim in the amount of $240,273.46. (ER0283; ER0884). Appellants filed a motion for relief from that order, which was denied. (ER0284; ER0303).

The facts giving rise to the claim concern a property lease. Appellants and

Appellee signed a lease (the "Agreement") for a dairy (the "Property") in Buckeye, Arizona, that went into effect August 1, 2011. (Excerpt of Record at 0217, "ER"). Appellee acted through the administrator of the estate, Gary Genske. (*Id.*). The Agreement was for a four-year lease on the property that would expire July 31, 2015. (*Id.*). It required Appellee to, among other things, reinstall all milking equipment, bring property infrastructure to good operating condition, warranty the property infrastructure for 90 days after the commencement of the lease, ensure "all utilities, fans, misters and shade" were in "proper working condition," ensure water handling systems were in operating condition, and re-certify truck scales. (ER0219). It also promised Appellants four move-in ready residences and a dairy office. (ER0217). It gave Appellants the chance to approve or disapprove the conditions and cancel the lease prior to taking control of the Property. (*Id.*).

Prior to taking control of the property, Appellants asked for 24 different repairs. (ER0088–89). The parties do not explain in their briefings which of these repairs were made, though the bankruptcy court concluded Appellee contracted with third parties to address some of them. (ER0874). In any event, the Appellants took control of the Property. Appellants provided further notice that they were unsatisfied with the Property at least twice in writing. (ER0098–99; ER0120–21). On appeal, they specifically point to two reasons that the Property could not be used as a dairy: (1) the scale was inoperable and (2) the system for cooling cattle was not functioning (Op. Br. at 5). Ultimately, Appellants vacated the premises in late February or early March 2012. (ER0245).

Appellee filed a claim in bankruptcy court against Appellants in the amount of $347,773.46. (ER0209). The total was derived from rent withheld during the time Appellants occupied the Property, rent for the 18 months it took for Appellee to find new tenants for the Property, and other costs to pay for damage to the Property that Appellee believes Appellants caused ("non-rental damages"). (ER0214–16). The Appellants argued that they were not obligated to perform under the Agreement because the Appellee materially breached the Agreement and/or constructively evicted them. After

three days of trial in the bankruptcy court, the court awarded a claim to Appellee in the amount of $240,273.46. (ER0870–84).

The bankruptcy court issued a memorandum decision explaining its order. (*Id.*). It held that Appellees did not materially breach the Agreement nor constructively evict Appellants. (ER0876–79). The purpose of the Agreement was to allow Appellants to operate a dairy, and the Property's shortcomings did not prevent them from doing so. (ER0877–78). The inoperable cooling system and scale may have made operating the dairy more difficult, but the remedy was not termination of the Agreement. (ER0878). Rather, any breach relating to the scale gave rise to a claim for damages. (*Id.* citing *Thompson v. Harris*, 9 452 P.2d 122, 126 (Ariz. Ct. App. 1969)). Likewise, the alleged breaches did not give rise to constructive eviction, as Appellants were not deprived of the beneficial enjoyment of the Property because they were able to operate their dairy and produce grade A milk. (*Id.* citing *Stewart Title & Trust of Tucson v. Pribbeno*, 628 P.2d 52, 53 (Ariz. Ct. App. 1981)). Furthermore, Appellants had advised Appellee that the cooling system repairs were not necessary until May 2012, so the bankruptcy court concluded that there were no damages from it being inoperable. (ER0877–78; ER0882). The bankruptcy court added that Appellants "had no reasonable concern that the cow cooling system would go unrepaired." (ER0878).

The bankruptcy court did, however, reduce the amount of the claim to account for the Property's shortcomings or lack of proof of certain damages. It held that Appellee did not meet its burden of proof to show that Appellants were obligated to pay for the non-rental damages. (ER0883). It also reduced the amount of the claim to account for the inoperable scale ($40,000 per a contractor's repair bid), the cost of remodeling one of the four residences on the Property because it was uninhabitable ($15,000 per testimony from the administrator of Appellee, Genske), and the cost of renting one of the residences because it was also uninhabitable ($600 a month for 25 months, which equals $15,000). (ER0881–84). This brought the claim's total down to $240,273.46. (ER0884).

On appeal, Appellants raise five issues: (1) whether the bankruptcy court applied

the correct measure of damages; (2) whether the bankruptcy court properly calculated Appellee's alleged damages; (3) whether the bankruptcy court incorrectly determined there was no constructive eviction; (4) whether Appellee's actions/inactions caused a breach of the lease; and (5) whether Appellants were justified in vacating the premises. (Op. Br. at 1–2). Appellee asserts, however, that Appellants only provided sufficient argument for the Court to consider the second and third issues.

The Court agrees and "will not consider any claims that were not actually argued in appellant's opening brief." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). The Court "cannot 'manufacture arguments for an appellant'" and will "review only issues which are argued specifically and distinctly in a party's opening brief." *Id.* (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). The "bare assertion of an issue does not preserve a claim." *Id.* (citing *D.A.R.E. America v. Rolling Stone Magazine*, 270 F.3d 793, 793 (9th Cir. 2001)). In the Opening Brief, Appellants do not develop arguments for their first, fourth, and fifth issues with any specificity. Even in the Reply, Appellants do not argue they preserved those issues, and the Court will not manufacture such arguments for them. Accordingly, the Court will not address them.

## II. STANDARD OF REVIEW

The parties agree that the second issue, whether the bankruptcy court properly calculated Appellee's damages is a question of fact reviewed for clear error. *See Howard v. Crystal Cruisers, Inc.*, 41 F.3d 527, 530 (9th Cir. 1994). "A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record. *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010) (citing *United States v. Hinkson*, 585 F.3d 1247, 1261–62, n. 21 (9th Cir. 2009) (en banc)).

The parties disagree on the standard of review for Appellants constructive eviction argument. Appellants believe it is de novo but provide no legal authority for that conclusion. (Op. Br. at 2). Appellee contends it is reviewed for clear error, arguing that it involves questions of fact. (Resp. at 1) (citing *Worcester Felt Pad Corp. v. Tucson*

*Airport Authority*, 233 F.2d 44, 50 (9th Cir. 1956) (recognizing that constructive eviction is a question for the jury); *Gottdiener v. Mailhot*, 431 A.2d 851, 855 (1981) (N.J. Super. App. Div. 1981) ("What amounts to a constructive eviction is a question of fact.")); *Auto. Supply Co. v. Scene-in-Action Corp.*, 340 Ill. 196, 201 (1930) (citations omitted) (same). Undoubtedly, resolving a constructive eviction claim involves questions of fact, but the bankruptcy court also made legal conclusions when considering Appellants constructive eviction claim. (ER0878–79). Accordingly, the Court will review the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. *See In re JSFJF Corp.*, 344 B.R. 94, 99 (B.A.P. 9th Cir. 2006).

## III. DISCUSSION

### 1. The Damages Calculation

Appellants assert that the bankruptcy court erred by not reducing Appellee's claim for not awarding damages for the failure to repair the cooling system. (Op. Br. at 12). They contend the record is clear and establishes (1) the cooling system was needed before May 2012; (2) Appellee's behavior demonstrates there would be delay in repairing the cooling system, if ever; and (3) cows produce less milk as temperatures rise. (*Id.*). They describe the evidence as "overwhelming." (*Id.*). Appellants are not persuasive.

In order to overturn the bankruptcy court for clear error, Appellants must show its ruling was "illogical, implausible, or without support in the record." *Retz*, 606 F.3d at 1196. The record is replete with evidence that would allow the bankruptcy court to rule in Appellee's favor on this issue. First, Appellant's own July 19, 2011, email to Appellee stated, "we shouldn't worry about [the cooling system] till next year in May or sometime before summer." (ER0088). During the trial, the bankruptcy court also heard testimony from various witnesses, including Genske, and William Viss, a contractor Genske had hired to repair parts of the property. Viss testified that he had repaired some shades prior to Appellants taking control of the Property, along with other work on the property. (ER0476–89). Genske testified that the contractors that were going to do the cooling repairs were going to do some other things and would come before the heat came back in

May 2012. (ER0350–51).

The bankruptcy court clearly found the evidence persuasive in favor of Appellee and found Genske and Viss's testimony credible. Appellants point to nothing in the record that convinces this Court that the bankruptcy's findings were illogical, implausible, or unsupported by the record. Accordingly, the Court will affirm the bankruptcy court on this issue.

### 2. Constructive Eviction

Appellants argue that the inoperable scale and cooling system "presented Appellants with a difficult, if not impossible situation" and constituted a constructive eviction. (Op. Br. at 7). They believe the bankruptcy court improperly focused on the fact that they were still able operate the dairy at a "modest profit." (Op. Br. at 8). Instead, they argue, the bankruptcy court should have focused "on the extent to which Appellee's multiple breaches of the Agreement deprived Appellants from fully enjoying the beneficial use of occupying the property." (Op. Br. at 9). In so doing, the bankruptcy court essentially held that a tenant could only be constructively evicted if the business was losing money. (*Id.*).

The bankruptcy court, however, did nothing of the sort. Contrary to Appellants' reading, the bankruptcy court's note that "the dairy was doing very well," was not the standard he applied in making his decision but rather a piece of evidence in determining the effect of the inoperable scale and cooling system. As Appellee points out, in Arizona, "[c]onstructive eviction occurs through intentional conduct by the landlord which renders the lease unavailing to the tenant or deprives him of the beneficial enjoyment of the leased property, causing him to vacate the premises." *Stewart Title & Trust of Tucson v. Pribbeno*, 628 P.2d 52, 53 (Ariz. Ct. App. 1981). This is the exact standard that the bankruptcy court quoted. (ER0878). The bankruptcy noted that Appellants were able to operate their dairy and produce grade A milk. (*Id.*).

As *Pribbeno* explains, constructive eviction is not proven by showing just any breach of a lease. *Pribbeno*, 628 P.2d at 53 (citing *Leafdale v. Mesa Wholeale Sales*

*Terminal*, 284 P.2d 649 (Ariz. 1955)). In *Leafdale*, a landlord promised to install a blower cooler of adequate capacity for the tenant to run a poultry, eggs, butter, cheese, and related merchandise wholesaler, but the landlord failed to do so. 284 P.2d at 650. The tenant believed this precluded the landlord from collecting rent. *Id.* In rejecting that position, the Arizona Supreme Court explained that a tenant takes possession of a property and uses it for the purposes intended, he is bound to pay the stipulated rent. *Id.* at 650–51. His remedy is to claim damages for any alleged breach; it is not to be completely relieved from his obligations under the lease. *Id.* Similarly in *Pribbeno*, a tenant alleged that a building's poor performing air conditioner constituted a constructive eviction. 628 P.2d at 53. The Arizona Court of Appeals held that even if the air conditioner was inadequate, "that alone may not have constituted constructive eviction under these facts." *Id.*

This is consistent with the out-of-state cases cited by Appellants. In *Scott v. Prazma*, the Wyoming Supreme Court explained that grounds for a constructive eviction "must amount to a *substantial interference* with possession or enjoyment." 555 P.2d 571, 579 (Wyo. 1976) (emphasis added). In *Cherberg v. Peoples Nat'l Bank of Wash.*, the Washington Supreme Court explained that constructive eviction can occur when a landlord does not maintain the property so that it is "*adequate* for the tenant's use." 564 P.2d 1137, 1142 (Wash. 1977) (emphasis added). The mere fact that Appellee breached the contract does not mean the breach rises to the level of constructive eviction. The bankruptcy court did not err by applying this standard.

Additionally, the bankruptcy court's factual findings regarding the constructive eviction issue are not clearly erroneous. The bankruptcy court's ultimate conclusion that Appellee's "alleged breaches did not deprive [Appellants] of the beneficial enjoyment of the Premise" is supported by the record. The bankruptcy court heard testimony from Genske that a scale is not required to successfully operate a dairy. (ER0384; ER0427). To be sure, he heard the opposite as well from one of Appellants' witnesses. (ER0608) (describing the lack of a scale as a "deal breaker"). Similarly, he heard opposing views as

to when cattle need the cooling system. (ER0697; ER0835). The bankruptcy court is in the position to weigh the credibility of that testimony, and, absent good reason, this Court will not second guess it.

Furthermore, a February 20, 2012, email from one of the Appellants stated that the cows were doing very well despite the poor condition of the dairy. (Supplemental Excerpts of the Record at 001, "SER"). The email also noted the cows were "in good shape with plenty of weight" and that they were "breeding exceptionally well." (*Id.*). This, along with Appellants' July 19, 2011, email saying that "we shouldn't worry about" the cooling system until May, undermines Appellants argument that the lack of the cooling system deprived him of the beneficial enjoyment of the Property. The Court cannot conclude that the bankruptcy court's findings were illogical, implausible, or unsupported by the record. Thus, it will affirm its decision.

## IV. CONCLUSION

Appellants have not shown that the bankruptcy court erred in granting Appellee a $240,273.46 claim against them. The bankruptcy court's denial of damages for the inoperable cooling system was not clear error. Nor did it apply the incorrect constructive eviction standard, and the facts it found and applied to the standard were not clearly erroneous.

Accordingly, **IT IS ORDERED** that the bankruptcy court's determination of the claim against appellants is **AFFIRMED**. The Clerk of Court is directed to enter judgment in favor of Appellee and against Appellants and shall close this case.

Dated this 15th day of May, 2019.

Honorable Susan M. Brnovich
United States District Judge